## THE GLADYS.

(Circuit Court of Appeals, Second Circuit. January 22, 1908.)

### No. 102.

1. SHIPPING—DUMPING OF CARGO BY LIGHTER—DANGEROUS SWELL CAUSED BY PASSING STEAMER.

The careening of a lighter proceeding up the Hudson river in tow, by which she dumped overboard her cargo of wine in barrels, *held*, on the evidence, not due to her unseaworthiness, but to a swell caused by a meeting steamer, for which her owners were liable because of her negligent navigation.

[Ed. Note.—Liability of vessel for injuries caused by creation of swell, see note to The Asbury Park, 78 C. C. A. 3.]

2. ADMIRALTY—PLEADING—ISSUES AND PROOF.

In a suit against a tug to recover for an injury to her tow and the loss of her cargo, where the respondent brought in the owner of a steamer, alleging that the injury was caused by the swell made by such steamer, the petitioner is not limited to proof that the swell was caused by the particular vessel named; but it is sufficient to charge the owner with liability if it is shown that it was caused by one of its vessels, although the particular boat is not identified.

Appeal from the District Court of the United States for the Southern District of New York.

De Forest Bros. and George Holmes, for appellant.

A. G. Thacher and Butler, Notman & Mynderse, for respondent Italian Swiss Colony.

Charles S. Haight and Wheeler, Cortis & Haight, for respondent Lee.

A. F. Cushman, for respondent Johnson.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The decree is affirmed, with costs, upon the opinion of the district judge and the report of the commissioner confirmed by him.

NOTE.—The following is the opinion of Holt, District Judge, in the District Court:

HOLT, District Judge. It seems to me that the evidence is uncontradicted that the tow was loaded in the usual manner; and, if it was loaded in the usual manner, that is the proper manner. I think that the evidence shows, also, that the Dillon was seaworthy. I do not see any satisfactory evidence that she was not. The captain says that after the accident she was not leaking. Her story that she was listing to starboard must, if true, have been due either to her leaking, or to some of the barrels getting loose, and some of the weight being swerved over on that side. There is no evidence that she was leaking. Men on the boat swear that they tested her before she started, and on the trip up, and that she was not leaking. The people who repaired her found nothing the matter with her hull, and if any of the chocks had given way, so that any of the barrels had become loose and the load got over on one side, it seems to me that the men on the lighter must have seen it, and that they must have made an outcry about it, or taken some action right away to restore the load to its proper symmetry. I think, therefore, that any claim that the boat was not seaworthy is not sustained by the evidence.

The question is, therefore, what caused this accident? If there was nothing in the boat to make her list over to one side, how did it happen that the barrels rolled over? It seems to me it must have been some sudden external force of a violent kind, because, as she rolled, she broke her mast out, and the barrels, in going overboard, took away the rail. They could only have been thrown out with great violence. The evidence of the two men on the float is that a Sandy Hook boat came down between the boat and the shore, and that there was a swell caused by it, which came up and over the bow and wet the feet of the men forward, and at the same time the impulse of the wave threw the boat violently to port, and then back, with the result that the boat partly careened, and a large portion of her cargo in the barrels went overboard. I think the evidence preponderates that that was the cause of the accident. The only question is whether it was a Sandy Hook boat. The allegation in the petition is that the Asbury Park was the boat; but I do not think that that is such an allegation that the party must prove that it was the Asbury Park. The respondent brought in the Central Railroad of New Jersey, and if it was any one of the Sandy Hook boats that is enough under the pleadings. These two men on the Dillon testify that, while they do not know which boat it was, they do know that it was one of those boats. The boats are well known about the harbor, and they are not yet contradicted in any respect as I can see, except by the man on the tug. For various reasons apparent in this testimony, I must say I cannot put much reliance on his evidence. According to his evidence there was not any Sandy Hook boat there, or any swell that caused the trouble, and yet we find that within a day or two after the accident happened notice was sent to the Central Railroad of New Jersey that the injuries were caused by one of their boats, and therefore they must send a man over to take part in a survey. The idea that there was nothing of a swell there seems to me not to be supported by a preponderance of evidence.

There should be a decree for the libelant against the Central Railroad of New Jersey, and not against Lee, and there should be an order of reference to compute the damages.

Mr. Benedict: Is the libel dismissed as to all the other boats?

The Court: Yes.

The following is the material part of the report of Commissioner James Ridgway:

"I have carefully considered all of the proofs in the case, as well those taken upon the trial of the cause, as those taken on the reference before me, and I do find that on the 25th day of July, 1905, the libelant, the New York branch of the Italian Swiss Colony, an incorporated company engaged in the business of wholesale dealer and producer in wines and brandies, was the owner and consignee of a shipment of 1,498 barrels of wine, sent by the California office of the colony by the ship Shenandoah to New York, and discharging at Bush's Stores, Forty-Second street, South Brooklyn, for the purpose of lightering the cargo from that point to New York, and that the manager of the New York branch engaged the services of the respondent H. M. Lee, a lighterman, and the respondent Lee engaged the services of Johnson, a part owner of the lighter Frank Dillon, and that the Dillon took on board at Forty-Second street on that day 350 barrels of such wine, and proceeded in tow of the tug Gladys bound for Canal street, New York, on the Hudson river, where said 350 barrels of wine were to be delivered to the Italian Swiss Colony; that while proceeding up the Hudson river, and when about abreast of Pier 25, the lighter careened and dumped her cargo overboard. The careening of the lighter and the loss of her cargo were due to the heavy swells created by the passing of one of the Sandy Hook boats, owned by the Central Railroad of New Jersey. 'She made such an awful swell' that the lighter took a severe roll to port and then came back to starboard. 'She filled herself full of water forward and aft,' and the barrels commenced to get loose and slide down, the shrouds were carried away forward, the bulwarks were swept away, and the Dillon was rendered substantially a wreck. The swells from the Sandy Hook boat came on board, wetting the cargo and the crew."